IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CV-376-D

MIA C. ALFORD, )
)
Plaintiff, )
)
v. ) **ORDER**
)
CHUCK ROSENBERG, and )
BETH COBERT, )
)
Defendants. )

On February 6, 2017, Mia C. Alford ("Alford" or "plaintiff"), proceeding pro se and in forma pauperis, filed a complaint against Chuck Rosenberg ("Rosenberg") and Beth Cobert ("Cobert"; collectively "defendants") [D.E. 1, 4, 5].[1] On October 26, 2018, defendants moved to dismiss for failure to state a claim or for summary judgment [D.E. 33], filed a memorandum in support [D.E. 34], and filed a statement of material facts and appendices [D.E. 35–37]. On October 29, 2018, the court notified Alford about the motions, the consequences of failure to respond, and the response deadlines [D.E. 38]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On November 1, 2018, Alford responded in opposition [D.E. 39]. On December 17, 2018, defendants replied [D.E. 43]. As explained below, the court grants defendants' motion for summary judgment.

I.

On May 16, 1988, Alford began working at the Drug Enforcement Administration ("DEA")

---

[1] The court substitutes Uttam Dhillon and Margaret Weichert for Chuck Rosenberg and Beth Cobert respectively. See Fed. R. Civ. P. 25(d).

as a clerk-typist in the Office of Personnel. See [D.E. 35] ¶ 1.[2] On August 16, 1989, Alford experienced pain and dizziness while lifting files. See id. ¶ 2. The United States Department of Labor's Office of Workers' Compensation Programs ("OWCP") accepted Alford's claim that she had suffered job-related "cervical strain, trapezia strain and aggravation of bilateral carpal tunnel syndrome." Id. In September 1993, the DEA placed Alford in a limited duty position in the personnel file room. See id. ¶ 3. From September 27, 1993, until September 1995, Alford received partial disability compensation. See id.

On February 28, 1994, Alford returned to full-time status. See id. ¶ 4. Dale Watts ("Watts") was her supervisor. See id. ¶ 5. Alford answered telephones, handled mail, updated files, and photocopied documents. See id. ¶ 6. She continued to experience intermittent back problems, which

---

[2] Under Local Civil Rule 56.1, a party opposing a motion for summary judgment shall submit "a separate statement including a response to each numbered paragraph in the moving party's statement [of material facts]." Local Civ. R. 56.1(a)(2). "Each numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." Id. "Each statement by the movant or opponent . . . must be followed by citation to evidence that would be admissible, as required by Federal Rule of Civil Procedure 56(c)." Local Civ. R. 56.1(a)(4). Under Rule 56(c), a party disputing a material fact must support its position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Merely responding that a party "disputes" a material fact is insufficient under Rule 56 and Local Rule 56.1. See Howard v. Coll. of the Albermarle, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (per curiam) (unpublished).

Alford's response to defendants' statement of material facts [D.E. 39] violates Local Rule 56.1. See [D.E. 43] 3–6 (summarizing Alford's violations). Where Alford does not oppose a statement of material fact by citing to particular parts of the record or showing that defendants cannot support their position based on evidence in the record, the court deems the material fact admitted. See Horton v. Methodist Univ., Inc., No. 5:16-CV-945-D, 2019 WL 320572, at *1 n.1 (E.D.N.C. Jan. 23, 2019) (unpublished), appeal docketed, No. 19-1174 (4th Cir. 2019); Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); Howard, 262 F. Supp. 3d at 329 n.1.

she attributed to her 1989 injury. See id. ¶ 7; [D.E. 36-4] ¶ 4. On March 14, 1995, Dr. Cantor, Alford's neurologist, excused Alford from work for two weeks. See [D.E. 35] ¶ 8.

OWCP authorized twelve physical therapy sessions for Alford to occur between March 30, 1995, and May 30, 1995. See id. ¶ 9. Alford informed one of her supervisors, Anne T. Murphy ("Murphy"), of her physical therapy sessions, and Alford asked if she would be "off work" for those months. Id. ¶ 10. Murphy informed Alford that Alford "would need to use accrued leave and provide a certificate from her therapist confirming each appointment and stating when the next appointment would be." Id. ¶ 11. In response, Alford asked whether there would be consequences if she was absent from work for two months. See id. ¶ 12. Murphy stated that Alford would probably be placed on absent without leave status. See id. ¶ 13; [D.E. 36-6]. Alford then asked if she could take off days on which she had physical therapy appointments. See [D.E. 35] ¶ 14. Murphy replied that Alford would be expected to work during the afternoon even on days in which she had physical therapy appointments scheduled in the morning. See id. ¶ 15. Murphy directed Alford to speak with Watts about her physical therapy. See id. ¶ 16.

Alford repeatedly wrote incorrect times on her leave slips or failed to show up for work without obtaining leave. See id. ¶ 17. Because of Alford's behavior, in March 1995, Watts placed Alford on leave restriction. See id. Under leave restriction, Alford had to submit leave requests before taking leave. See id. ¶ 18. On March 15, 1995, Alford, Watts, and Debra Coleman ("Coleman") met. See id. ¶ 19. At the meeting, Coleman informed Alford that she must charge any leave taken to annual leave, leave without pay, or absent without leave status. See id.

On June 19, 1995, Alford filed a formal complaint alleging discrimination on the basis of race and disability (i.e., her lower back injury). See id. ¶ 20; [D.E. 36-9, 36-10]. Specifically, Alford alleged that Watts discriminated against her by placing her on leave restriction in March 1995. See

3

[D.E. 35] ¶ 21. Alford also alleged that management held her to a different standard for decisions concerning leave and withheld and denied leave because of her disability. See id. ¶ 22.

Alford's final annual performance appraisal, covering the period between July 1, 1995, and June 30, 1996, shows that the DEA required Alford only "to answer the phone and pick up and deliver mail." Id. ¶ 23; [D.E. 36-11]. On March 28, 1996, Watts mailed a letter to Alford because Alford had not reported to work since March 4, 1996. See [D.E. 35] ¶ 24; [D.E. 36-12]. Because Alford had not explained her absence from work, Watts informed her that Watts had placed her on absent without leave status for the payment period that ended on March 30, 1996. See [D.E. 35] ¶ 24. Watts also directed Alford to respond in person to explain why Alford was absent. See id. ¶ 25. Alford received this letter. See id. ¶ 30. On August 7, 1996, Retha M. Fulmore ("Fulmore") informed Alford that the DEA was considering terminating her employment. See id. ¶ 31. Alford did not respond to this letter. Cf. id. ¶ 34.

On October 10, 1996, John Brown, III ("Brown"), then DEA Deciding Official, informed Alford that he had received charges of misconduct against Alford. See id. ¶¶ 32, 41; [D.E. 36-16]. Specifically, Brown informed Alford that Fulmore had submitted complaints concerning Alford's excessive unauthorized absences and failure to adhere to leave reporting requirements. See [D.E. 35] ¶ 33. Accordingly, Brown informed Alford that the DEA had decided to terminate her employment. See id. ¶ 36.

On December 11, 1996, Alford filed a second Equal Employment Opportunity Commission ("EEOC") charge, alleging race, sex, and disability discrimination, sexual harassment, and retaliation. See id. ¶ 44; [D.E. 37-4]. Alford challenged her denial of leave, placement on absent without leave status, the failure of the DEA to recognize her disability or to accommodate her, and her termination. See [D.E. 35] ¶ 44. On May 22, 2000, the EEOC dismissed the complaint because

4

Alford had failed to contact an EEOC official concerning the claims and had failed to respond to requests for information. See id. ¶ 45. At the time, counsel represented Alford. See id.

Alford appealed the dismissal. See id. ¶ 46. On March 22, 2001, the DEA's Senior Attorney in Civil Litigation notified the EEOC Director that Alford's attorney had been disbarred on January 13, 2000. See id. ¶ 47. On April 23, 2001, the Senior Attorney informed the EEOC Director that a notice of agency representation was mailed to Alford's last known address, but it was returned as unclaimed. See id. ¶ 48. On May 11, 2001, an administrative law judge ("ALJ") informed Alford that, if she did not respond by May 25, 2001, he would dismiss her complaints for failure to prosecute. See id. ¶ 50. Alford did not respond, and the ALJ dismissed both of her complaints. See id. ¶ 51. On July 19, 2001, the Department of Justice Complaint Adjudication Officer issued a final decision that accepted the dismissal of Alford's two EEOC complaints for failure to prosecute. See id. ¶ 52.

On January 19, 2013, Alford appealed her 1996 termination from the DEA to the DEA's Merit Systems Protection Board ("MSPB"). See id. ¶ 53. On March 18, 2013, the MSPB dismissed the appeal as untimely. See id. ¶ 54. Alford appealed to the United States Court of Appeals for the Federal Circuit, which transferred the case to this court. See id. ¶ 56. On February 25, 2016, this court consolidated the appeal with a second civil action that Alford had filed, vacated the MSPB's decision that Alford's appeal was untimely, and remanded the case to the MSPB for consideration on the merits. See id. ¶ 58. On April 8, 2016, the MSPB authorized the parties to engage in discovery. See id. ¶ 59.

On July 13, 2016, the DEA responded to the MSPB's order and argued that the MSPB should dismiss the action under the doctrine of laches. See id. ¶ 61. Under DEA document retention policies, the DEA routinely destroys documents for disciplinary or adverse actions against DEA

employees four years after the DEA closes that case. See id. ¶ 37. Uaida E. Watkins ("Watkins"), the head of the DEA's Employee Relations Unit, testified that the DEA could not locate Alford's files after repeated searches and that the DEA would likely have destroyed Alford's files in approximately 2000. See id. ¶ 38; [D.E. 37-2] ¶ 5. These files would have contained a copy of the proposed action against Alford (i.e., her termination), her reply, and the final decision issued by Brown, the Deciding Official. See [D.E. 35] ¶ 39. Moreover, Brown retired in 2003. See id. ¶ 41. During his time as Deciding Official, Brown decided hundreds of adverse actions, and, while he recognizes his signature on the October 10, 1996 termination letter, he now lacks any recollection of the adverse action against Alford. See id. ¶ 42; [D.E. 37-3] ¶¶ 4–5.

On July 29, 2016, the MSPB ordered Alford to show cause why the MSPB should not dismiss the appeal and provided Alford the opportunity to respond to the DEA's arguments and evidence. See id. ¶ 64; [D.E. 37-14]. On August 1, 2016, Alford responded that the DEA had fired her without cause because her father's lawyer had filed a discrimination lawsuit on her behalf. See [D.E. 35] ¶ 65. Alford argued that the DEA only had hearsay evidence. See id. ¶ 66. In response, the DEA argued that, given the decades since Alford's termination in 1996, the DEA could not provide contemporaneous documents or testimonial evidence to support its decision to terminate Alford. See id. ¶ 67. On August 5, 2016, the MSPB dismissed Alford's appeal under the doctrine of laches. See id. ¶ 68; [D.E. 37-17]. Alford did not appeal this dismissal. See [D.E. 35] ¶ 68. On September 19, 2016, the dismissal became final. See id.

On February 6, 2017, Alford filed a complaint in this court alleging that defendants discriminated against her on the basis of disability by failing to accommodate Alford and failing to comply with court orders to issue Alford disability retirement benefits [D.E. 5]. On October 26,

2018, defendants moved to dismiss Alford's complaint for failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment [D.E. 33].

## II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of plaintiff's position [is] insufficient...." Id. at 252.; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

7

A.

In her pro se complaint, Alford alleges that defendants terminated her employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). See Compl. [D.E. 5] 2–3. In relevant part, Title VII forbids employers to "discharge any individual . . . because of such individual's race, color, religion, sex, or national origin," or in retaliation for engaging in protected activity. 42 U.S.C. § 2000e-2(a)(1); see 42 U.S.C. § 2000e-3(a). The court also construes Alford's complaint to allege that, on October 10, 1996, defendants terminated her because of her disability in violation of the Americans with Disabilities Act of 1990 ("ADA"). See Compl. [D.E. 5] 4. In relevant part, the ADA forbids employers from discriminating against persons with disabilities. See 42 U.S.C. § 12112(a)–(b); Adams v. Anne Arundel Cty. Pub. Sch., 789 F.3d 422, 430 (4th Cir. 2015). Defendants argue that the court should affirm the MSPB's decision to dismiss Alford's claims and grant summary judgment to defendants.

The Civil Service Reform Act of 1978, 5 U.S.C. § 1101 et seq., permits a federal employee subjected to an adverse personnel action to appeal the relevant agency's decision to the MSPB in some circumstances. See 5 U.S.C. §§ 1221(a), 7512, 7701; Kloeckner v. Solis, 568 U.S. 41, 43 (2012). "When an employee complains of a personnel action serious enough to appeal to the MSPB and alleges that the action was based on discrimination," the employee alleges a mixed case. Kloeckner, 568 U.S. at 44 (emphasis omitted); see 29 C.F.R. § 1614.302. Although generally judicial review of MSPB decisions is possible in the United States Court of Appeals for the Federal Circuit, a federal employee who "claims that an agency action appealable to the MSPB violates an antidiscrimination statute listed in [5 U.S.C.] § 7702(a)(1) should seek judicial review in district court." Kloeckner, 568 U.S. at 56; see Winey v. Mattis, 712 F. App'x 284, 284 (4th Cir. 2018) (per curiam) (unpublished); Bonds v. Leavitt, 629 F.3d 369, 378 (4th Cir. 2011); Peterik v. United States,

8

No. 7:16-CV-41-FL, 2017 WL 1102617, at *3 (E.D.N.C. Mar. 24, 2017) (unpublished); Alford v. Leonhart, Nos. 7:14-CV-196-F, 7:14-CV-268-F, 2016 WL 816777, at *1 (E.D.N.C. Feb. 25, 2016) (unpublished). A termination of employment is a sufficiently serious personnel decision to warrant appeal to the MSPB. See Kloeckner, 568 U.S. at 47; Bonds, 629 F.3d at 378.

To the extent that Alford alleges a race discrimination, sex discrimination, or retaliation claim under Title VII, or a disability discrimination claim under the Rehabilitation Act, 29 U.S.C. § 791, arising from her termination from the DEA in 1996, Alford may seek judicial review of the MSPB's decision to dismiss her appeal in this court. See 5 U.S.C. § 7702(a)(1)(B)(i), (iii). That the MSPB did not reach the merits of Alford's claims does not preclude judicial review. See Kloeckner, 568 U.S. at 50; Alford, 2016 WL 816777, at *1. In exercising judicial review over a mixed case, the court reviews the MSPB's decision concerning the discrimination claims de novo. See, e.g., Alford, 2016 WL 816777, at *1; Lucas v. Brownlee, No. 5:04-CV-127-BO(1), 2005 WL 8159195, at *3 (E.D.N.C. Apr. 22, 2005) (unpublished).

As for Alford's discrimination claims arising from her 1996 discharge, the MSPB dismissed her appeal under the doctrine of laches, because Alford did not appeal her 1996 termination until 2013. To establish laches, a defendant must show "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." Equal Emp't Opportunity Comm'n v. Navy Fed. Credit Union, 424 F.3d 397, 409 (4th Cir. 2005) (quotation omitted); see White v. Daniel, 909 F.2d 99, 102 (4th Cir. 1990); Acosta v. Jardon & Howard Techs., Inc., No. 4:18-CV-16-D, 2018 WL 5779506, at *2 (E.D.N.C. Nov. 2, 2018) (unpublished). Lack of diligence exists where the plaintiff "has unreasonably delayed in pursuing [her] claim." Navy Fed.

Credit Union, 424 F.3d at 409; see White, 909 F.2d at 102 (collecting cases).[3] When a delay is great, the party asserting laches may make a lesser showing of prejudice. See White, 909 F.2d at 102. Alford demonstrated lack of diligence by failing to appeal her termination for 16 years. Alford's alleged mental illness does not preclude the conclusion that her 16-year delay was unreasonable. See, e.g., Gibbs v. Merit Sys. Prot. Bd., 615 F. App'x 685, 686 (Fed. Cir. 2015) (per curiam) (unpublished). Defendants have suffered prejudice because the DEA has destroyed critical contemporaneous documents under routine document retention procedures and key witnesses' memories have faded. Accordingly, the court grants summary judgment to defendants concerning Alford's discrimination claims arising from her termination.

B.

In her complaint, Alford also seeks an order from this court requiring the Office of Personnel Management ("OPM") to grant her disability retirement benefits. See Compl. [D.E. 5] 4. In exercising judicial review of a MSPB decision, the court reviews the MSPB's decisions concerning nondiscrimination claims deferentially and will set a decision aside only if the MSPB's findings or conclusions are "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); see Hooven-Lewis v. Caldera, 249 F.3d 259, 266 (4th Cir. 2001); Alford, 2016 WL 816777, at *1.

---

[3] Often, latches is a fact-bound issue and precludes summary judgment. See Jeffries v. Chi. Transit Auth., 770 F.2d 676, 679 (7th Cir. 1985); McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 618–19 (E.D.N.C. 2006). Alford, however, failed to address defendants' statement of material facts and, therefore, admitted those facts as true. See Howard, 262 F. Supp. 3d at 329 n.1. Thus, no genuine issue of material fact exists concerning defendants' laches defense.

As for Alford's request that the court "compel [the] Office of Personnel Management to grant [her] emergency immediate disability retirement" benefits, Alford argues in support that "three (3) judges have issued an order to have [her] disability retirement given to [her] and [that] the MSPB board still won't process" her benefits. Compl. [D.E. 5] 4. The three orders that Alford references, which she attached to her complaint, do not order the MSPB to process Alford's disability retirement benefits. See [D.E. 5-1]; [D.E. 5-2]; [D.E. 5-3]. Although in 2003 the OPM denied Alford's application for disability retirement benefits, the MSPB has not made any decision concerning Alford's backpay or disability retirement benefits. See [D.E. 36-1] 3–4. Because there is no genuine issue of material fact and defendants are entitled to judgment as a matter of law, the court grants summary judgment to defendants concerning Alford's claim seeking an order requiring the MSPB to process her backpay or disability retirement benefits.

III.

In sum, the court GRANTS defendants' motion for summary judgment [D.E. 33]. The clerk shall close the case.

SO ORDERED. This _2_ day of May 2019.

JAMES C. DEVER III
United States District Judge